UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN R. SCHULZ,<br><br>Plaintiff,<br><br>v.<br><br>DEBRA FROST, OFFICER COLON, SERGEANT JOHANNESSEN, MTC, CMS, CAPP, SICI,<br><br>Defendant. | Case No. 1:13-cv-00135-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are Defendant Debra Frost's Motion for Summary Judgment (Dkt.31-1) and Defendants Officer Colon and Sergeant Johannessen's Motion for Summary Judgment (Dkt.35-1). For the reasons explained below, the Court will grant both motions.

## PROCEDURAL BACKGROUND

Schulz filed his complaint on March 21, 2013 (Dkt.3). The Court issued its initial review order on October 15, 2013 (Dkt.11). The Court allowed Schulz to proceed against Nurse Frost, Officer Colon, and Sgt. Johannessen. The Court dismissed CMS/Corizon, SICI, Brian Finn, and Rona Seigert. The Court also permitted Schulz to proceed against Anita Travis, but this Defendant has yet to be served.

The Court allowed Schulz to proceed against Nurse Frost on the allegation that the situation required more emergency action, noting that "liberally construed, this stated a claim for deliberate indifference under the Eighth Amendment." Dkt.11, p. 9. The Court also permitted a claim to proceed against Frost under the Fourteenth Amendment Due Process Clause for allegedly "disclosing private medical information to other inmates during the course of the investigation." Id. The Court held that Schulz could not proceed on a verbal abuse claim because this was not sufficient to constitute a constitutional deprivation. Id. The Court also noted that HIPAA does not provide a private cause of action. Id., p. 8.

The Court allowed Schulz to proceed with a single cause of action against Officer Colon and Sgt. Johannessen. The Court liberally construed the allegations that they conducted their investigation in a public and not private manner "as a cognizable substantive due process claim under the Fourteenth Amendment." Id.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale,* 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers,* 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

The Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## ANALYSIS

1.  **Nurse Frost**

    A.  **Eighth Amendment**

    To maintain an Eighth Amendment claim under 42 U.S.C. § 1983, a plaintiff must show that the Defendants were deliberately indifferent to his serious medical needs. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) citing *Estelle v. Gamble,* 429 U.S. 97,104 (1976). Schulz claims that because he had a serious medical condition he should have been transferred to a hospital or other suitable emergency care facility, but because Frost did not deem it appropriate, he suffered damage and injury as a result of her deliberate indifference to his situation.

    The Ninth Circuit applies a two-part test in determining whether deliberate indifference was manifest in a defendant's actions. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). First, a plaintiff must show a serious medical need by demonstrating that

failure to treat that condition could result in further injury. *Id.* Second, a plaintiff must show that the defendant's response to the medical need was indifferent. *Id.*

Here, on the morning of July 5, 2012, Schulz was seen by PA Karen Barrett around 7:20 a.m. Schulz was later seen by LPN Pettit around 6:15 p.m. that night. Neither PA Barrett nor LPN Pettit found that Schulz required emergency care. In fact, not only was emergency care not recommended, but no medical care was immediately recommended. PA Barrett did say that she would schedule Schulz for a colonoscopy sometime "soon."

Schulz was then seen by Frost at approximately 10:30 p.m. Following her initial assessment, Frost called the medical provider, PA Mike Takagi, and reported her findings. PA Takagi likewise did not deem it necessary for Schulz to be referred immediately for any treatment.

Approximately two months later, Schulz's colonoscopy was performed. No surgical procedures were necessary. At a subsequent medical visit, Dr. April Dawson found everything with the exam normal, except for non-thrombosed, non-bleeding internal hemorrhoids. She determined that no further treatment was necessary.

Under these circumstances, even considering the facts in the light most favorable to Schulz, Schulz cannot maintain an Eighth Amendment claim. Schulz cannot show a serious medical need by demonstrating that failure to treat his condition could result in further injury. Even after being examined by several other medical professionals, none of them recommended further treatment to prevent any further injury. Moreover, there is no

evidence that Frost's response to the medical need was indifferent. Frost's diagnosis was in line with the other medical professionals and ultimate finding that Schulz did not need additional treatment. Accordingly, the Court will grant Frost summary judgment on Schulz's Eighth Amendment claim.

### B.     Fourteenth Amendment

Schulz alleges that Frost disclosed private medical information to other inmates during the course of the investigation in violation of his Fourteenth Amendment right to privacy. The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV. But the Supreme Court has stated that "imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). Loss of privacy is an "inherent incident[ ] of confinement." *Bell v. Wolfish*, 441 U.S. 520, 537, (1979). Generally, "whatever privacy right [a prisoner] has may be overridden for legitimate penological reasons." *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010).

Here, Schulz takes issue with Frost asking him medical questions while corrections officers were present. But the officers' presence was required by specific security measures. Dkt.35-2, Ex. A. Otherwise, Schulz only suggests that other inmates heard about his condition. This is not enough to allege a Fourteenth Amendment violation. Accordingly, the Court will grant Frost summary judgment on Schulz's Fourteenth Amendment claim.

2.     **Officer Colon and Sgt. Johannessen**

A.  **Fourteenth Amendment**

Schulz was allowed to move forward on his Fourteenth Amendment claim "liberally construed as a claim that these Defendants disclosed private health care information to the public." Dkt.11, p. 8. As alluded to above, and noted in the Court's earlier Order, "privacy is necessarily curtailed in prison, and an investigation is sometimes easily observable by other inmates and may also involve questioning other inmates." Dkt.11, p. 8. Officer Colon and Sgt. Johannessen, as required by MTC guidelines and protocols, as well as the Prison Rape Elimination Act of 2003, acted to eliminate any threat of harm to Shultz and other prisoners. To this end, the officers investigated the situation based upon Schulz's statements.

Schulz has not provided the Court with any specific facts to support a claim that the officers acted outside prison guidelines or the Prison Rape Elimination Act.  As the Court noted in its initial review, Schulz "bear[s] the burden of proof to bring forward evidence to show he can proceed to trial on this claim." Id. He has not met that burden. When there is a medical emergency in prison, it is the staff's duty to ensure that other inmates did not cause the harm, particularly when a sexual assault could have taken place. Dkt.35-3, Ex 1 MTC Training "Ensuring Safe Prisons/Prison Rape Elimination"; Dkt.35-2, Ex. A "Prisoner Rape Elimination Act of 2003". Because Schulz's pain was coming from his anal area, it was appropriate for officers to investigate if the harm was the result of sexual abuse. In accordance with MTC's uniform guidelines and procedures,

Officer Colon and Sgt. Johannessen conducted an investigation into a potential sexual battery on Schulz because of his rectal bleeding. Dkt.35-2, Ex. B; Dkt.35-3, ¶ 9. Additionally, even though Schulz denied being sexually assaulted, a potential victim's denial of sexual battery does not end the required investigation and therefore Officer Colon and Sgt. Johannessen were required to finish their investigation. Id.

While other inmates could potentially learn about the events, Schulz has not provided the Court with any evidence that either Officer Colon or Sgt. Johannessen disclosed any of Schulz's private medical information, medical history, or medical situation to anyone other than those who needed to know for purposes of his medical exam and the investigation. Absent such evidence, there is no genuine issue of disputed fact that the officers did not violate Schulz's Fourteenth Amendment rights. Accordingly, the Court will grant the officers summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendant Debra Frost's Motion for Summary Judgment (Dkt.31) is **GRANTED.**

2. Defendants Officer Colon and Sergeant Johannessen's Motion for Summary Judgment (Dkt.35) is **GRANTED**.

3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.



DATED: July 22, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court